UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE MEGA COMPANY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 94-2075 (RMC) |
| DANUBIANA TYRE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This action is before the Court on a motion by Defendant Danubiana Tyre Company, S.A. ("Danubiana") to vacate the final judgment of this Court entered in favor of The Mega Company ("Mega") on January 7, 1999.[1] Danubiana argues that, under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA" or "Act"), the Court was without jurisdiction over the action. The motion to vacate will be denied because Defendant has not shown that this Court's initial exercise of jurisdiction was in error.

## BACKGROUND

In 1992, Danubiana contracted to sell tires to Mega with direct shipment to Star Sawmill Products, Ltd. ("Star") in Kumasi, Ghana. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Motion to Vacate ("Pl. Mem."), Ex. 1, 4; Defendant's Motion to Vacate

---

[1] Mega is a corporation established in 1983 under the laws of the District of Columbia with its principal place of business in Washington, D.C. At the time of the commercial transaction giving rise to this action, Danubiana was a wholly-owned agency or instrumentality of the Government of Romania.

1

("Def. Mem."), Attach. 2; Compl. ¶ 9. Defendant expressly warranted that the tires delivered to Star would be free from fault or defect for one year from the date of delivery. Pl. Mem., Ex. 1. Danubiana delivered the first shipment of tires to Star. These tires were allegedly defective and caused accidents that resulted in property damage and personal injury. Pl. Mem., Ex. 10, 11. Star made claims against Plaintiff, which Plaintiff settled. Pl. Mem., Ex. 12, 13.[2]

Mega filed suit against Danubiana in this Court on September 26, 1994, alleging breach of contract and breach of express warranty, and seeking a declaratory judgment. Compl. ¶¶ 17-29. In its Complaint, Plaintiff stated that the Court had subject-matter jurisdiction over this case under 28 U.S.C. § 1330(a) because Defendant was an instrumentality of a foreign sovereign and Plaintiff's action was a non-jury civil action.[3] Mega also stated that Danubiana was not entitled to immunity under the FSIA.

Defendant was served but failed to appear or defend itself against the claims. Pl. Mem. at 7. Plaintiff obtained entry of default and Judge June L. Green held a hearing pursuant to Rule 55 of the Federal Rules of Civil Procedure to determine the amount of damages. *See* FED. R. CIV. P. 55(b)(2). On August 7, 1995, the Court entered judgment in the amount of $553,000, plus

---

[2] As a result of the defective tires, Plaintiff was also allegedly unable to complete a contract with another customer, Trade House. Pl. Mem., Ex. 7, 8. The Trade House contract was entered into before Plaintiff became aware of the tire defects. *Id*. Plaintiff was unable to satisfy the contract with Trade House because of Plaintiff's inability to find tires at a price comparable to the price negotiated in the contract with Defendant. Pl. Mem. at 5-6, Ex. 14.

[3] *See* 28 U.S.C. § 1330(a) ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under section 1605-1607 of this title or under any applicable international agreement."); 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.").

interest, in favor of Plaintiff. Upon motion by Plaintiff, Judge Green amended the original order on January 7, 1999, entering final judgment against Danubiana in the same amount, plus statutory interest.

Eight years after the grant of default judgment and over four years after entry of final judgment, Danubiana filed the instant Motion to Vacate Judgment, arguing that "[t]his Court lacks subject matter jurisdiction over this action because contrary to the allegations in Mega, Inc.'s Complaint, Danubiana has engaged in no conduct that brings it within the commercial activity exception to the FSIA." Def. Mem. at 5.[4] Mega opposes, arguing that Danubiana has made materially false assertions in its motion to vacate and that it is using this stale litigation to derail an ongoing action between the parties in another jurisdiction. It opposes the motion on the merits and requests that it be awarded its attorneys' fees for the defense of a motion made in bad faith.[5]

---

[4] Chief Judge Thomas F. Hogan presided over the procedural aspects of this case after Judge Green retired in January 2001. This case was later reassigned to the undersigned on June 10, 2005.

[5] Mega also argues that the motion should be denied because Danubiana failed to submit a verified answer as required by Local Rule 7(g). *See* LCvR 7(g) ("A motion to vacate an entry of default, or a judgment by default, or both, shall be accompanied by a verified answer presenting a defense sufficient to bar the claim in whole or in part."). But, "[a] party attacking a judgment as void need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the judgment treated for what it is, a legal nullity." *Combs v. Garin Trucking*, 825 F.2d 437, 442-43 (D.C. Cir. 1987). As the disposition of this motion does not depend on resolving this possible conflict, the Court makes no finding on whether the motion should be denied based on Local Rule 7(g). *See Owens v. Republic of Sudan*, 2005 WL 724592 (D.D.C. 2005) ("[T]his Court is unaware of any decision in which a court has struck a motion to dismiss following an entry of default because the motion to vacate the default was filed without an answer.").

**LEGAL STANDARD**

Rule 60 of the Federal Rules of Civil Procedure provides that "upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding" if, *inter alia*, "the judgment is void." FED. R. CIV. P. 60(b)(4).[6] A judgment is void if the Court was without jurisdiction to issue it. *See CFTC v. Nahas*, 738 F.2d 487, 491-92 (D.C. Cir. 1984) (defendant may ignore judicial proceedings, have default judgment entered against it, and later challenge the judgment on jurisdictional grounds); *id.* at 492 ("when an enforcement order entered by default is beyond the jurisdictional grant of the issuing court, the order is void").[7]

"Under the FSIA, a foreign state is immune from the jurisdiction of American courts unless the case falls within one of a list of statutory exceptions (or as provided by international agreements)." *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C.

---

[6] To the extent that Danubiana has properly raised a theory under Rule 60(b)(3) in its Reply, the Court finds the record insufficient to support a finding of fraud or other misconduct. *See* FED. R. CIV. P. 60(b)(3); *Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 643-43 (D.C. Cir. 1996) ("Fraud upon the court refers only to 'very unusual'" cases such as "bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony."); *Bulloch v. United States*, 721 F.2d 713, 718 (10th Cir. 1983) ("Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements, or perjury.").

[7] The Court pauses to note that Danubiana brings this motion quite late, nearly eight years after the Court first entered judgment, after extensive proceedings to execute on the judgment, and while related litigation is ongoing in Massachusetts. While the filing is somewhat suspect for these reasons, the record is inadequate to justify the imposition of attorneys' fees as requested by Plaintiff. *See Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 402 n.18 (D.C. Cir. 1986) (an exception to the "American Rule" exists such that attorneys' fees may be awarded for bad faith or oppressive litigation practices); *Singer v. Shannon & Luchs Co.*, 779 F.2d 69, (D.C. Cir. 1985) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) and explaining that the determination is within the discretion of the district court). The request is denied.

Cir. 2004) (citing 28 U.S.C. § 1604).[8] "If no exception applies, the district court lacks subject matter jurisdiction. If an exception does apply, the district court has jurisdiction." *Id.* (citing 28 U.S.C. § 1330(a); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 (D.C. Cir. 2002); *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000)).[9]

In what is commonly referred to as the "commercial activity exception," a foreign state is not immune if it is engaged in commercial activity in, or having effects in, the United States. 28 U.S.C. § 1605. A district court has subject-matter jurisdiction over a civil action involving a foreign state if the case is based upon an action that is:

  1. a commercial activity carried on in the United States by the foreign state;

  2. performed in the United States, in connection with a commercial activity of the foreign state elsewhere; or

  3. performed outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

*See* 28 U.S.C. § 1605(a)(2).

The plaintiff bears the initial burden of presenting evidence that one of the FSIA exceptions applies. Once this burden is satisfied, the defendant must show that the plaintiff's allegations do not bring its case within a statutory exception to immunity. *Kilburn*, 376 F.3d at 1131; *see Nahas*, 738 F.2d at 492 n.9 ("A federal court presumptively lacks jurisdiction in a

---

[8] A "foreign state" under the Foreign Sovereign Immunities Act includes instrumentalities of foreign states. 28 U.S.C. § 1603(a), (b). The status of Danubiana as an instrumentality of the state of Romania during the relevant time period is not disputed by the parties. Def. Mem. at 6 n.3; Pl. Mem. at 4 n.5.

[9] The FSIA provides the sole basis for courts in the United States to obtain jurisdiction over foreign states and their agencies and instrumentalities. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).

proceeding until a party demonstrates that jurisdiction exists. A party must therefore affirmatively allege in his pleadings the facts showing the existence of jurisdiction, and the court must scrupulously observe the precise jurisdictional limits prescribed by Congress."). The defendant must prove its entitlement to immunity by a preponderance of the evidence. *Crist v. Republic of Turkey*, 995 F. Supp. 5, 10 (D.D.C. 1998) (concluding that the House report on the FSIA reflects congressional intent to create a burden-shifting process when foreign states plead a defense of immunity under FSIA); *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 307 (9th Cir. 1997) (stating that when a plaintiff offers evidence that the commercial activity exception under FSIA applies, the defendant bears the burden of proving by a preponderance of the evidence that the exception does not apply); *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 397 (4th Cir. 2004) ("Once a plaintiff offers evidence that an exception to immunity applies, the defendant bears the burden of proving by a preponderance of the evidence that the exception does not apply."); *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003) (upholding the lower court's finding that the defendants satisfied their ultimate burden of proof by a preponderance of the evidence that the exception to the FSIA did not apply); *Alberti Int'l, Inc. v. Empresa Nicaraguense de la Carne*, 705 F.2d 250, 256 (7th Cir. 1983) (stating that a defendant must prove its entitlement to immunity by a preponderance of the evidence); *see also Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 242 (2d Cir. 2002) ("[On the issue of immunity] the ultimate burden of persuasion by a preponderance of the evidence nevertheless remains with the alleged foreign sovereign."); *Gould Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 452 n.5 (6th Cir. 1998) ("Once the foreign state has produced such *prima facie* evidence of immunity, the burden of going forward would shift to the plaintiff to produce evidence establishing that the foreign state is not entitled to immunity. The

ultimate burden of proving immunity would rest with the foreign state.").

Mega has already satisfied its initial burden of demonstrating that the commercial activity exception applies by presenting allegations in the complaint and evidence to the Court at the damages hearing for the default judgment. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493-94 (1983) (at the threshold of every action against a foreign state, the district court must satisfy itself that one of the exceptions to foreign sovereign immunity under FSIA applies); *accord Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2nd Cir. 1998) ("A court entering a default judgment may assume that it has jurisdiction over the defendant when the defendant does not appear in court to contest the judgment, but that assumption does not preclude the defendant from later contesting jurisdiction in the enforcing court."). Accordingly, the burden is on Danubiana to prove by a preponderance of the evidence that the claim at issue does not arise under any of the three categories of commercial activity, each of which is an independent ground for finding that a foreign state does not have sovereign immunity under the commercial activity exception.

Danubiana has not met its burden. Specifically, it has not shown by a preponderance of the evidence that Plaintiff's claim is not based upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).[10] Danubiana does not dispute that the

---

[10] Although Danubiana argues that the facts are not precisely as proposed by Mega, the discrepancies that the evidence support are insufficient to carry Defendant's burden of proving that Plaintiff's allegations do not bring its case within a statutory exception by a preponderance of the evidence. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 198 (D.C. Cir. 2004) (holding that the foreign state failed to prove by a preponderance of the evidence that the court did not have subject matter jurisdiction when it offered only slight factual variations from Plaintiff's allegations and no affirmative evidence that its conduct was not within the exception to FSIA).

negotiation and fulfillment of the tire contract are "commercial activity of a foreign state."[11]  *See Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 614 (1992) ("[W]e conclude that when a foreign government acts not as a regulator of a market, but in the manner of a private player within it, the acts are 'commercial' within the meaning of the FSIA."); *Saudi Arabia v. Nelson*, 507 U.S. 349, 359-60 (1993) ("[A] state is immune from the jurisdiction of foreign courts as to its sovereign or public acts (*jure imperii*), but not as to those that are private or commercial in character (*jure gestonis*)."); *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241 (2nd Cir. 1994) ("If the sovereign's activity is commercial in nature and has a direct effect in the United States, then the jurisdictional nexus is met, no immunity attaches, and a district court has the authority to adjudicate disputes based on that activity.").  Further, its evidence does not sufficiently counter Plaintiff's evidence that Danubiana's commercial activity had a "direct effect" on the United States.

First, Defendant does not dispute that Mega is an American corporation and that Danubiana was a wholly-owned agency or instrumentality of Romania at the time of the transaction. Second, Defendant does not offer any documentary evidence that credibly supports its assertion that it dealt with Plaintiff's Romanian affiliate, Mega SRL, rather than Mega in the negotiation and formation of the contract.  Indeed, some of Defendant's own evidence contradicts this assertion.  *See* Def. Mem., Attach. 1, Ex. A (a record from the Romania Trade Industry).[12]  Further, Defendant fails

---

[11] The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act.  The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).

[12] As part of this argument, Defendant alleges that the negotiation process included a meeting in Romania at which the sale "was negotiated by Mr. Salah Turkmani, Mega SRL's President and sole individual shareholder." *See* Def. Mem. at 4, Attach. 3 (Turkmani Transcript). It supports this allegation, however, with the Record of the Romanian Trade Registry, which shows that Mega, and not Salah Turkmani, wholly owns Mega SRL.  *See* Def. Mem., Attach. 1,

to counter effectively Plaintiff's evidence that: 1) a payment invoice was sent to Plaintiff, identifying Mega as the buyer, *see* Pl. Mem., Ex. 4; and 2) that Mega arranged for a wire transfer of funds from a bank in the United States to Defendant's account at a Romanian bank that referenced the terms of the contract, *see* Pl. Mem., Ex. 5 (receipt of wire transfer from Riggs Bank). Third, Defendant does not offer any evidence to dispute that, as a result of Defendant's commercial activity, Plaintiff incurred debt.

In *Transamerican Steamship Corp. v. Somali Democratic Republic*, 767 F.2d 998, 1004 (D.C. Cir. 1985), the D.C. Circuit affirmed the district court's finding of jurisdiction where: 1) a foreign instrumentality detained a ship and demanded payment through a bank transfer in the United States; and 2) the detention caused an American company to incur significant additional debts in related and foreseeable charges. Although not on all fours with *Transamerican Steamship*, its reasoning plainly applies here. *See Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 151 (2nd Cir. 1991) (courts must be concerned with Congress' goal of permitting judicial redress for the commercial acts of a foreign sovereign). Plaintiff incurred a debt as a result of the commercial activities of a foreign instrumentality – debt that was foreseeable, concrete, and measurable. That the debt was incurred, at least in part, via a third party, does not defeat a finding of direct effect. *See Transamerican Steamship*, 767 F.2d at 1004 (noting that in addition to the direct debt incurred by the payment of a fee, the U.S. corporation also "incur[red] additional debts to the American vessel owner to the tune of $10,000 a day in time charter costs and related charges."); *Mar. Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094 (D.C. Cir. 1982) (examining "substantial" and "direct and foreseeable" standards to the "direct effect" exception in a case where s U.S. company

---

Ex. A.

incurred debt that resulted from the breach of a commercial contract with a foreign sovereign); *accord Hanil Bank v. PT. Bank Negara Indonesia,* 148 F.3d 127 (2nd Cir. 1998) (finding jurisdiction under the "direct effect" exception based on a breach of contract when an Indonesian bank did not repay debts due in the United States).

## CONCLUSION

The motion to vacate is denied. The Court finds that Defendant has not sustained its burden of disproving that Plaintiff's claim is based upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere causing a direct effect in the United States. This conclusion confirms that this Court has subject matter jurisdiction over Plaintiff's claim and upholds the default judgment against Defendant as a properly executed final judgment. A separate order accompanies the memorandum opinion.


DATE: August 1, 2005.                                /s/
                                                     ROSEMARY M. COLLYER
                                                     United States District Judge